Joseph H. Harrington
Acting United States Attorney
Eastern District of Washington
Ann T. Wick
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT
FOR THE EASTERN DISTRICT OF WASHINGTON

| UNITED STATES OF AMERICA, | Case No.: 2:19-CR-00215-TOR-2 |
|---|---|
| Plaintiff, | |
| vs. | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| JONNY SHINEFLEW, | |
| Defendant. | |

Plaintiff, United States of America, by and through Joseph H. Harrington, Acting United States Attorney for the Eastern District of Washington, and Ann T. Wick, Assistant United States Attorney for the Eastern District of Washington, submits the following memorandum setting forth the government's position at sentencing. The government recommends that the Court sentence the defendant to 24 months on Count 41, consecutive to a term of imprisonment of 120 months for Counts 1 and 38, all followed by a five-year term of supervised release.

**GOVERNMENT'S SENTENCING MEMORANDUM - 1**

# BACKGROUND

Defendant Jonny Shineflew is being sentenced for his role in a 10-defendant bank fraud conspiracy. Defendant pleaded guilty to Conspiracy to Commit Bank Fraud (Count 1), Mail Theft (Count 38), and Aggravated Identity Theft (Count 41), pursuant to a written plea agreement, wherein the government and Defendant agreed to recommend a five-year term of supervised release, and Defendant agreed to pay restitution in the amount of $29,453.15 and a money judgment in the amount of $8,831.80. ECF No. 476. The parties are free to recommend any legal term of imprisonment and fine. *Id*.

Both parties objected to the Presentence Investigation Report (PSR). The government objected to the PSR's loss calculation and lack of role adjustment. ECF No. 517. Defendant objected to a two-level enhancement applied for the offense involving over 10 victims and to the PSR not identifying U.S.S.G. § 5K2.23 as a potential basis for a downward departure. ECF No. 516. Defendant also objected to a factual representation regarding the circumstances of his reported ADHD diagnosis. *Id*. Subsequent to the government's objection regarding loss, Defendant filed a belated objection to the PSR's loss calculations, as well as to a factual representation regarding the seed company checks discussed in greater detail below and in the government's Objection. ECF No. 518.

**GOVERNMENT'S SENTENCING MEMORANDUM - 2**

The government submits that its objections should be sustained. The government further submits that Defendant's objections as to loss amount and victim count should be overruled.

## LEGAL ANALYSIS

The Ninth Circuit has set forth a basic framework which the district courts should follow in compliance with the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005):

(1) Courts are to begin all sentencing proceedings by correctly determining the applicable sentencing guidelines range, precisely as they would have before *Booker*.

(2) Courts should then consider the § 3553(a) factors to decide if they support the sentence suggested by the parties. Courts may not presume that the guidelines range is reasonable. Nor should the guidelines factors be given more or less weight than any other. They are simply to be treated as one factor among the § 3553(a) factors that are to be taken into account in arriving at an appropriate sentence.

(3) If a court decides that a sentence outside the guidelines is warranted, then it must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.

(4) Courts must explain the selected sentence sufficiently to permit meaningful appellate review.

*United States v. Carty*, 520 F.3d 984, 991-92 (9th Cir. 2008).

**GOVERNMENT'S SENTENCING MEMORANDUM - 3**

# SENTENCING CALCULATION

## I. Statutory Maximum and Minimum Sentence

For the defendant's conviction for conspiracy to commit bank fraud, the Court may impose a term of imprisonment of up to 30 years, a fine of up to $1,000,000 or double gross proceeds, a term of supervised release of up to five years, and a special assessment of $100. PSR ¶ 247.

For the defendant's conviction for mail theft, the Court may impose a term of imprisonment of up to five years, a fine of up to $250,000, a term of supervised release of up to three years, and a $100 special assessment. PSR ¶ 247.

For the defendant's conviction for aggravated identity theft, the Court must impose a minimum term of imprisonment of two years, consecutive to any other sentence, and may impose a fine of up to $250,000, a term of supervised release of up to one year, and a $100 special assessment. PSR ¶ 247.

## II. United States Sentencing Guidelines Calculation

"As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

### A. Offense Level Calculation

The PSR incorrectly calculated the defendant's total offense level as 13. PSR ¶ 60. This calculation is based on a loss amount of $20,201.48, between $15,000 and

**GOVERNMENT'S SENTENCING MEMORANDUM - 4**

$40,000 (PSR ¶ 51) and does not include an enhancement for Defendant's supervisory role in the offense pursuant to U.S.S.G.§3B1.1(b). The government objected on these grounds. ECF No. 517. Defendant also objected to loss (ECF No. 518), as well as to a two-level enhancement for Defendant's offense involving 10 or more victims under U.S.S.G. §2B1.1(b)(2)(A). ECF No. 516.

### 1. 12 levels should be added due to Defendant's intended loss of $489,983.83.

The government submits that the loss amount in this case should be based on Defendant's intended loss of $489,983.83, pursuant to U.S.S.G. §2B1.1. ECF No. 517. This is because the Guidelines Commentary directs that the greater of intended loss or actual loss is to be used to calculate the offense level. §2B1.1 n.3(A). *See United States v. Cingari*, 952 F.3d 1301, 1308 (11th Cir.), cert. denied, 141 S. Ct. 835, 208 L. Ed. 2d 409 (2020) ("To properly interpret the Sentencing Guidelines, we begin with the language of the Guidelines, considering both the Guidelines and the commentary.") (internal citation omitted). "T]he guideline and the commentary must be read together, because the commentary may interpret the guideline or explain how it is to be applied." *Id.* (internal citation and quotation omitted).

Defendant counters that this Commentary should be ignored, because the term "loss" in §2B1.1 is unambiguous. ECF No. 519. However, Defendant's objection ignores, *inter alia*, U.S.S.G.§1B1.7: "The Commentary that accompanies the guideline sections may serve a number of purposes. First, it may interpret the

**GOVERNMENT'S SENTENCING MEMORANDUM - 5**

guideline or explain how it is to be applied.  Failure to follow such commentary could constitute an incorrect application of the guidelines, subjecting the sentence to possible reversal on appeal." U.S.S.G. §1B1.7 (citing 18 U.S.C. § 3742). "[C]ommentary explains the guidelines and provides concrete guidance as to how even unambiguous guidelines are to be applied in practice." *Stinson v. U.S.*, 508 U.S. 36, 44 (1993).  Commentary is binding on courts unless it violates the Constitution or a federal statute, or is plainly erroneous or inconsistent with the Guideline at issue. *Stinson*, at 45-47.

The government's reply to Defendant's position is set forth in greater detail in ECF No. 525, and is incorporated herein.  The bottom line is that Guidelines Commentary, including that which defines actual and intended loss, is authoritative and binding on this Court.  *Kisor v. Wilkie*, 139 S.Ct. 2400 (2019) did not change this rule.  Moreover, if the Supreme Court had meant for *Kisor* to change this rule, it could have granted certiorari in *Cingari*; it did not. 141 S.Ct. 835 (Mem), 208 L.Ed.2d 409 (2020).  Thus, this Court is to look to the definition of loss in the Commentary to determine Defendant's offense level and apply the greater of actual or intended loss. §2B1.1 n.3(A).

The government submits that the correct enhancement for loss in this case is 12 levels, pursuant to §2B1.1(b)(1)(G), based on an intended loss between $250,000 and $550,000.

**GOVERNMENT'S SENTENCING MEMORANDUM - 6**

**2. Three levels should be added as a role adjustment.**

Pursuant to U.S.S.G.§3B1.1(b), three levels should be added for Defendant's supervisory role in his crimes of conviction. A three-level increase is warranted where a defendant is a manager or supervisor and the criminal activity involved five or more participants or was otherwise extensive. *Id*. To summarize the government's argument set forth in more detail at ECF No. 517 and incorporated herein: there were 10 co-defendants involved, the criminal activity was extensive, there were agreements to split the proceeds amongst the co-conspirators depending on their participation in the scheme, and various aspects of the conspiracy were directly supervised by Defendant, such as with Co-Defendant Pilon and Co-Defendant Tabitha Shineflew. Defendant also exercised control over Co-Defendants Bordelon and Johnston.

**3. The PSR correctly added two levels for the number of victims.**

U.S.S.G. §2B1.1(b)(2)(A) provides that two levels should be added where "the offense" "involved 10 or more victims." A "victim" includes, *inter alia*, any person, corporation, and company who "sustained any part of the actual loss determined under [§2B1.1](b)(1)." §2B1.1 n.1. Further:

> In a case in which undelivered United States mail was taken, or the taking of such item was an object of the offense, or in a case in which the stolen property received, transported, transferred, transmitted, or possessed was undelivered United States mail, 'victim' means (I) any victim as defined in Application Note 1; or (II) any person who was the intended recipient, or addressee, of the undelivered United States mail.

§2B1.1 n.4(C)(i).

**GOVERNMENT'S SENTENCING MEMORANDUM - 7**

The actual loss attributable to Defendant's offense is $30,453.15. ECF No. 8. That total is derived from conduct causing actual loss to at least 10 victims, including Numerica Credit Union, Alphacard, Home Depot, Golden Hills Brewery, Leo Gassling and Son, TRM Services, Jake's Café, Pepmove, Royal Business Systems,[1] and the victim from Spokane County Case No. 18-1-04662-0. PSR ¶¶ 144, 146. The addressees of the checks Defendant stole from the mail are additional victims. §2B1.1 n.4(C)(i).

If the Court sustains the government's objections, the adjusted offense level is 26, after adding 12 levels based on loss amount, 2 levels based on number of victims, and 3 levels for a role adjustment. After a 3-level reduction for acceptance of responsibility, the total offense level is 23.

### B. Criminal History Calculation

The PSR correctly calculated the defendant's criminal history category as category VI, based on a total of 25 points. PSR ¶ 149.

### C. Advisory Guideline Range

Based on a total offense level of 23, the advisory range in this case is 92-115 months.

## IMPOSITION OF SENTENCE

---

[1] Based on check nos. 4276, 1248, 52820, 1385, 1258, 9825, 6284, 40347, 7807, 29609, 9401, and 25576.

**GOVERNMENT'S SENTENCING MEMORANDUM - 8**

## I. Imposition of a Sentence under 18 U.S.C. § 3553

### A. 18 U.S.C. § 3553(a) factors

#### 1. The nature and circumstances of the offense

The Court is well-informed as to the nature and circumstances of Defendant's present crimes, as Defendant is the last of the 10 defendants to be sentenced. Defendant stole checks, altered checks, presented stolen and fraudulent checks for payment, manufactured and provided to others counterfeit identifications, to include identification of another person, to pass and attempt to pass the fraudulent checks. The batch of checks stolen from the Landmark Turf and Native Seed mailbox, totaled approximately $458,498. Through the course of the conspiracy, fraudulent checks were successfully passed by Defendant and co-conspirators for a total of $29,453.15, not including amounts based on checks not charged in the Indictment but charged in state court cases and included as relevant conduct in Defendant's PSR, and codefendants' PSRs. Defendant personally realized proceeds in the amount of $8,831.80, again not including proceeds gained from fraudulent check activity charged in other court cases. The nature and circumstances of the defendant's offense support a significant prison sentence of the kind recommended by the government.

#### 2. The history and characteristics of the defendant

The defendant's history and characteristics support an above-guideline sentence. Defendant is no stranger to the criminal justice system. At the age of 20,

**GOVERNMENT'S SENTENCING MEMORANDUM - 9**

Defendant committed, in three separately filed cases, three counts of forgery and one count of grand theft. PSR ¶¶ 66-71. He was convicted of the first forgery in September 1993, the second forgery and grand theft in April 1994, and the third forgery in May 1994. *Id.* At the age of 21, Defendant committed burglary, while released on another felony case. PSR ¶ 73-75. After a 32-month prison sentence, Defendant next evaded police, apparently while driving under the influence. PSR ¶¶ 76-77. After several parole violations in that case, Defendant committed First Degree Burglary in 2002, now 28 years old. PSR ¶¶ 77-78. Defendant broke into the victim's home, assaulted her in her bedroom, hog-tyed her with flex-ties, and held a knife to her throat. PSR ¶¶ 80-81. Shortly after he served the three-year sentence imposed for that crime, Defendant again burglarized a dwelling, this time using a firearm to restrain his victims. PSR ¶¶ 85-97. Before being sentenced for the crime, Defendant committed two more theft crimes. PSR ¶ 98, 108. Defendant was paroled in January 2013. PSR ¶ 102. By July 2013 he had returned to crime and committed several instances of identity theft before the end of the year. PSR ¶¶ 112-117. After another period of incarceration, Defendant was committed First Degree Trafficking in Stolen Property, more identity theft, possession of a $30,000 stolen vehicle, more forgery, and residential burglary, all in 2018, partially overlapping the bank fraud conspiracy of the present federal case. PSR ¶¶ 118-148. He was sentenced in relation to several of those crimes in 2019 and entered a state drug court program in November

**GOVERNMENT'S SENTENCING MEMORANDUM - 10**

2019.  PSR ¶ 156.  Defendant absconded from Drug Court by January 2020. PSR ¶ 153.

Defendant's history and repetition of the kinds of crimes captured in the PSR support a sentence of 120 months, plus the consecutive 24-month sentence required for Count 41.

> 3. <u>The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment.</u>

Although not a violent crime, fraud is not a victimless crime.  A sentence of the kind recommended by the government provides just punishment in this instance.

> 4. <u>The need for the sentence imposed to afford adequate deterrence and to protect the public.</u>

As noted above, this is not Defendant's first time being sentenced for fraud crimes.  Indeed, Defendant's extensive criminal history—extending over thirty years and broken only by periods of incarceration—demonstrates that Defendant has continually and willfully victimized members of the community, notwithstanding the various lengths of jail and increasing prison sentences of his past.  Neither the prison sentences, nor the opportunities of probation or parole, were sufficient to deter Defendant from the present offenses.  Nor did previous opportunities for substance abuse treatment prevent Defendant from his life of crime.  Defendant was most recently given an opportunity to participate in the Spokane County Drug Court

**GOVERNMENT'S SENTENCING MEMORANDUM - 11**

program, which he entered in November 2019. PSR ¶ 156. Defendant absconded within two months, despite his wife expecting a child, and despite knowing that a federal investigation of Defendant's crimes was pending. ECF Nos. 315 at 7, 476 at 6.

With the record before this Court, the Court has an opportunity to impose a sentence that not only deters Defendant from returning to crime, but also other like-minded individuals. A substantial prison sentence of the kind recommended by the government adequately serves the goals of deterrence and protection of the public.

5. <u>The kinds of sentences available</u>

The Court must sentence Defendant to prison and may also impose a fine and include a term of supervised release. Probation is precluded by statute. PSR ¶ 227.

6. <u>The established sentencing range</u>

The established sentencing range depends on the Court's rulings regarding the parties' objections. The government submits that the correct advisory range is 92-115 months, based on a total offense level of 23.

7. <u>The need to avoid unwarranted sentence disparities</u>

A sentence proposed by the government would avoid unwarranted sentence disparities.

**GOVERNMENT'S SENTENCING MEMORANDUM - 12**

8. <u>The need to provide restitution to any victims of the offense</u>

Defendant stipulated in his plea agreement to pay restitution in the amount of $29,453.15. ECF No. 476 at 12. The amount payable to each victim is as follows:

$3,778.62 to AlphaCard
$2,850 to Bank of America
$3,845.49 to Heritage Bank
$1,053.18 to Home Depot
$4,550 to Key Bank
$4,000 to Numerica
$1,115.86 to Umpqua Bank
$8,260 to Washington Trust Bank

The government requests that this restitution be joint and several with the following co-defendants, as follows:

Angus Johnston, in the full amounts set forth above.

Tabitha Shineflew, in the amount of $2,000 to Numerica.

Jared Pilon, in the amount of $1,053.18 to Home Depot.

Michael Slater, in the amount of $2,555 to Washington Trust Bank.

Anthony Wright, in the amounts of:

$384.90 to AlphaCard
$290.40 to Bank of America
$391.80 to Heritage Bank
$107.10 to Home Depot
$463.50 to Key Bank
$407.40 to Numerica
$113.70 to Umpqua Bank
$841.20 to Washington Trust Bank

**GOVERNMENT'S SENTENCING MEMORANDUM - 13**

Britney McDaniel, in the amounts of:

$641.50 to AlphaCard
$484 to Bank of America
$653 to Heritage Bank
$178.50 to Home Depot
$772.50 to Key Bank
$679 to Numerica
$189.50 to Umpqua Bank
$1,402 to Washington Trust Bank

Adrianna McCrea, in the amounts of:

$2,850 to Bank of America
$4,550 to Key Bank
$2,850 to Washington Trust Bank

Jordan Yates, in the amounts of:

$641.50 to AlphaCard
$484 to Bank of America
$653 to Heritage Bank
$178.50 to Home Depot
$772.50 to Key Bank
$679 to Numerica
$189.50 to Umpqua Bank
$1,402 to Washington Trust Bank

Tyler Bordelon, in the amounts of:

$256.60 to AlphaCard
$193.60 to Bank of America
$261.20 to Heritage Bank
$71.40 to Home Depot
$309 to Key Bank
$271.60 to Numerica
$75.80 to Umpqua Bank
$560.80 to Washington Trust Bank

**GOVERNMENT'S SENTENCING MEMORANDUM - 14**

B.  Application of the Guidelines in Imposing a Sentence under 18 U.S.C. § 3553(b)

The Guidelines, formerly mandatory, now serve as one factor among several that courts must consider in determining an appropriate sentence. *Kimbrough v. United States*, 552 U.S. 85, 90 (2007). It remains, however, that "the Commission fills an important institutional role: It has the capacity courts lack to base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise." *Id.* at 108-09 (internal quotation marks omitted). Thus, "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Id.* (quoting *Rita v. United States*, 551 U.S. 338, 350 (2007)).

The Guidelines are the sole means available for assuring some measure of uniformity in sentencing, thereby fulfilling a key congressional goal in adopting the Sentencing Reform Act of 1984. Reference to the Guidelines, while carefully considering the 3553(a) factors, is the only available means of preventing the disfavored result of basing sentences on the luck of the draw in judicial assignments. Therefore, "district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 552 U.S. at 50 n.6.

The government is asking the Court in this case to follow the Guidelines as outlined in this Memorandum, then depart upward under the guidance of the

**GOVERNMENT'S SENTENCING MEMORANDUM - 15**

Guidelines, as outlined in the Government's Motion for Upward Departure, filed contemporaneously.  A district court must consider the guidelines range, *see* § 3553(a)(4), and is usually well-advised to follow the Sentencing Commission's advice in order to assure fair, proportionate, and uniform sentencing of criminal offenders.  There are no 3553(a) factors in this case which warrant imposition of a sentence below the advisory range; to the contrary, the 3553(a) factors on balance support the imposition of the recommended above-guidelines sentence.  Accordingly, the government recommends a sentence of 120 months on Counts 1 and 38, followed by 24 months on Count 41.

## CONCLUSION

Application of 18 U.S.C. § 3553 supports a total sentence of 144 months in this case.  The government submits that such a sentence is sufficient, but not greater than necessary, to accomplish the goals of sentencing, and that a lesser sentence is not supported by application of the 18 U.S.C. § 3553(a) factors.

Dated:  June 9, 2021.

Joseph H. Harrington
Acting United States Attorney

*s/ Ann T. Wick*
Ann T. Wick
Assistant United States Attorney

**GOVERNMENT'S SENTENCING MEMORANDUM - 16**

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. Counsel of record will be sent a copy of this filing by e-mail.

*s/ Ann T. Wick*
Ann T. Wick
Assistant United States Attorney

**GOVERNMENT'S SENTENCING MEMORANDUM - 17**